# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO OSCAR CHUBB,<br>Petitioner,<br>v.<br>MINGA WOFFORD, et al.,<br>Respondents. | Case No. 1:26-cv-06407-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART RESPONDENT'S MOTION TO DISMISS, DISMISS COUNTS III AND IV AND DENY COUNTS I AND II OF PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF Nos. 1, 8) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends granting in part and denying in part Respondents' motion to dismiss, dismissing Counts III and IV, and denying Counts I and II of the petition for writ of habeas corpus.

## I.

## BACKGROUND

Petitioner is a citizen of Guatemala who entered the United States without inspection on or about September 24, 2007. Petitioner is the father of two U.S. citizen children. Petitioner's son has autism and is non-verbal, depending heavily on Petitioner's care. Before his detention, Petitioner had been gainfully employed as a restaurant dishwasher and in gardening. (ECF No. 1 at 7.[1])

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

On January 13, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner while he was waiting at a bus stop on his way to work. The officers were searching for a different person but instead arrested Petitioner without a warrant. Petitioner was subsequently placed in removal proceedings. (ECF No. 1 at 7.)

On April 28, 2026, Petitioner filed his first petition for writ of habeas corpus in this Court. Chubb v. Current or Acting Field Off. Dir., No. 1:26-cv-03251-JLT-EPG-HC, 2026 WL 1240919, at *1 (E.D. Cal. May 6, 2026), report and recommendation adopted as modified, 2026 WL 1506858 (E.D. Cal. May 29, 2026). On May 29, 2026, the Court granted the petition and ordered in pertinent part:

> 4. **Within 48 hours of this order**, Respondents **SHALL** undertake an initial custody determination pursuant to 8 U.S.C. § 1226(a) at which point they may either release Petitioner or continue his detention if deemed appropriate.
>
> 5. Thereafter, if Petitioner is not released, and no arrest warrant has been issued, Respondents **SHALL** immediately seek an arrest warrant. If the warrant is not granted, Respondents **SHALL** immediately release Petitioner. If a warrant is granted, within 10 days of the initial custody determination, Respondents **SHALL** provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) at which the parties will be allowed to present evidence and argument about whether Petitioners are a danger to the community and present a flight risk if not detained.

Chubb, 2026 WL 1506858, at *1.

On June 8, 2026, an immigration judge ("IJ") held a bond hearing and denied bond due to danger and flight risk. (ECF No. 8-5.) Petitioner alleges that the IJ denied bond based on his "2012 misdemeanor DUI, his only criminal record of more than fourteen years old." (ECF No. 1 at 2.)

On August 11, 2026, Petitioner filed a second petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On August 12, 2026, the Court denied the motion for TRO as untimely. (ECF No. 7.) On September 1, 2026, Respondents filed a motion to dismiss, and Petitioner filed a reply on September 8, 2026. (ECF Nos. 8, 9.)

On October 26, 2026, an IJ ordered Petitioner removed. An appeal was received by the Board of Immigration Appeals ("BIA") on November 3, 2026. See Executive Office of

Immigration Review, Automated Case Information System, https://acis.eoir.justice.gov/en/caseInformation (last visited Nov. 19, 2026).

## II.

## DISCUSSION

In the petition, Petitioner raises the following claims for relief: (1) Petitioner's prolonged detention beyond six months violates procedural due process; (2) Petitioner's detention bears no reasonable relation to any legitimate government purpose and violates substantive due process; (3) Petitioner was detained without a warrant, in violation of the Fourth Amendment; and (4) Petitioner's warrantless arrest violated the Administrative Procedure Act, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8(c)(2)(i). (ECF No. 1 at 8–12.)

### A. Abuse of Writ

Respondents argue that the petition should be dismissed as abuse of the writ. (ECF No. 8 at 2–3.) The common law "doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011) (citation omitted). A "successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." Alaimalo, 645 F.3d at 1049 (citations omitted).

The Court finds Counts III and IV could have been raised in Petitioner's prior habeas petition and to a certain extent these issues were addressed by the Court's order granting the first petition, which ordered Respondents to conduct an initial custody determination and to seek an arrest warrant if Petitioner is not released. Accordingly, the undersigned recommends finding that Respondent's motion to dismiss should be granted as to these claims for abuse of the writ.

As to Petitioner's prolonged detention procedural due process and substantive due process claims, the undersigned recommends finding that dismissal is not warranted under the abuse of writ doctrine because prolonged detention claims are inherently dynamic and evolve as the time in detention grows longer.

**B. Procedural Due Process**

In Count I, Petitioner asserts that his prolonged detention beyond six months violates due procedural due process. (ECF No. 1 at 8–9.) “The detention of aliens during removal proceedings has long been upheld as a permissible exercise of the political branches’ authority over immigration,” and the Ninth Circuit has held that 8 U.S.C. § 1226(a), which “offers substantial procedural protections to detained persons,” is not facially unconstitutional. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193–94 (9th Cir. 2022). In Rodriguez Diaz, the Ninth Circuit denied the petitioner’s prolonged detention claim and held that due process did not require a second § 1226(a) bond hearing for a petitioner who had been detained for over fourteen months after his first § 1226(a) bond hearing. 53 F.4th at 1207–14.

As Rodriguez Diaz did “not foreclose all as-applied challenges to § 1226(a)’s procedures,” 53 F.4th at 1213, the Court will apply the Mathews v. Eldridge, 424 U.S. 319 (1976), test to determine whether Petitioner is entitled to relief. See Rodriguez Diaz, 53 F.4th at 1193, 1206 (“assum[ing] without deciding” that the Mathews test applied, noting that the Ninth Circuit has “regularly applied *Mathews* to due process challenges to removal proceedings,” and finding “*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context”); Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting) (“agree[ing] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation”).

In Mathews, the Supreme Court held that “identification of the specific dictates of due process generally requires consideration of three distinct factors”:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

\\\

1. Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)).

However, the Court is cognizant that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court has considered that Petitioner received one bond hearing before an IJ and acknowledges Petitioner's "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Rodriguez Diaz, 53 F.4th at 1208. Based on the foregoing, the undersigned recommends finding that the first Mathews factor weighs slightly in favor of Petitioner.

2. Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous

procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

On June 8, 2026, Petitioner had an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a). The IJ denied release, finding Petitioner is a danger and flight risk. (ECF No. 8-5 at 1.) Petitioner had the right to appeal that decision to the BIA, and to the extent the agency made errors of law in denying Petitioner's request for release on bond, the decision "would also be subject to judicial review in habeas." Rodriguez Diaz, 53 F.4th at 1210. Like the petitioner in Rodriguez Diaz, the determination to detain Petitioner "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)). Accordingly, the undersigned recommends finding that the second Mathews factor weighs against Petitioner.

3. Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, "the governmental issue at stake [here] is the ability to detain Petitioner *without providing him with another bond hearing*, not whether the government may continue to detain him." Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (emphasis in original). See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in

immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers"). Accordingly, the undersigned recommends finding the third Mathews factor weighs in favor of Petitioner.

4. Conclusion

Based on the foregoing, the undersigned recommends finding that the low risk of erroneous deprivation outweighs Petitioner's private interest in freedom from prolonged detention and the government's weak interest in continuing to detain Petitioner without a second bond hearing and that due process does not compel a second bond hearing (or Petitioner's immediate release) at this time. Petitioner has not established that his case is distinguishable from Rodriguez Diaz, and he has been detained for five months after his first bond hearing, far less than the fourteen months in Rodriguez Diaz.

**C. Substantive Due Process**

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'" United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due

process and procedural due process." Id. (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." Salerno, 481 U.S. at 746 (internal quotation marks and citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." Salerno, 481 U.S. at 746 (citation omitted).

In Wong Wing v. United States, 163 U.S. 228 (1896), the Supreme "Court held that punitive measures could not be imposed upon aliens ordered removed because 'all persons within the territory of the United States are entitled to the protection' of the Constitution." Zadvydas, 533 U.S. at 694 (quoting Wong Wing, 163 U.S. at 238). See Zadvydas, 533 U.S. at 694 (Kennedy, J., dissenting) ("Where detention is incident to removal, the detention cannot be justified as punishment nor can the confinement or its conditions be designed in order to punish." (citing Wong Wing, 163 U.S. 228)).

"As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." Salerno, 481 U.S. at 746 (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). However, "[i]t is undisputed that at some point, . . . detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (quoting Salerno, 481 U.S. at 747 n.4). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." Torres, 995 F.3d at 708 (citing Salerno, 481 U.S. at 747). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (citation omitted).

This Court has applied a three-factor test for substantive due process claims "involv[ing] a case-by-case analysis of the (1) length of detention and whether it is excessive in relation to its regulatory purpose; (2) evidence supporting the determination that detention is warranted to prevent flight risk or community danger; and (3) conditions of confinement." Shafaq v. Warden, California City Corr. Facility, No. 1:26-cv-00299 JLT SKO, 2026 WL 1785249, at *5 (E.D. Cal. June 22, 2026) (citing Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *7–11 (E.D. Cal. June 2, 2025)).

1. Length of Detention

The Ninth Circuit has stated in the context of criminal pretrial detention, "It is undisputed that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. 739, 747 n.4). Although the Ninth Circuit held Torres's twenty-one-month criminal pretrial detention due to the COVID-19 pandemic and suspension of jury selection and trials did not violate due process, the Ninth Circuit nevertheless "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and noted that "all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." Torres, 995 F.3d at 709, 710 (citing United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit.")).

Here, Petitioner has been detained for ten months, which is shorter than the twenty-one months the Ninth Circuit found to be "approaching the limits of what due process can tolerate" in the criminal pretrial detention context. Torres, 995 F.3d at 709. This Court has held that a petitioner's "detention of twenty-one months is not excessively prolonged to find a substantive due process violation." Shafaq, 2026 WL 1785249, at *8. Accordingly, the undersigned recommends finding that the length of detention factor does not weigh in Petitioner's favor.

2. Flight Risk and Danger

"To the extent this substantive due process test requires review of an IJ's determinations of flight risk or danger, this Court" reviews an IJ's determinations under an abuse of discretion

standard. Shafaq, 2026 WL 1785249, at *6. "Under an abuse of discretion standard, 'we cannot reweigh evidence ... [but] can [only] determine whether the BIA applied the correct legal standard.'" Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (alterations in original) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).

Petitioner appears to challenge the IJ's bond denial on the basis that the IJ relied on Petitioner's "2012 misdemeanor DUI, his only criminal record of more than fourteen years old." (ECF No. 1 at 7.)

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"
>
> > (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.*

Martinez, 124 F.4th at 783. "An Immigration Judge has broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "Any evidence in the record that is probative and specific can be considered." Id. at 40–41.

Here, the IJ properly considered Petitioner's criminal record. "Because the IJ . . . w[as] entitled to place some weight on [criminal record] in their analysis of [dangerousness], the Court generally lacks jurisdiction to review whether they placed too much." Kharis v. Sessions, No. 18-cv-04800-JST, 2018 WL 5809432, at *8 (N.D. Cal. Nov. 6, 2018) (citing Sales v. Johnson, 323 F. Supp. 3d 1131, 1139 (N.D. Cal. 2017)). Accordingly, the undersigned recommends finding that the second factor does not weigh in Petitioner's favor.

\\\

3. Conditions of Confinement

In the context of addressing whether "ICE's COVID-19 policies reflected unconstitutional 'punishment' under the Fifth Amendment," the Ninth Circuit stated:

> "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Wolfish*, 441 U.S. at 535, 99 S.Ct. 1861. We have thus held that "a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" *Id.* at 933–34 (alteration accepted) (first quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004); and then quoting *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Wolfish*, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021). In the context of a former state prisoner who was civilly detained pending proceedings under California's SVPA, the Ninth Circuit stated that "[t]he civil nature of SVPA confinement provides an important gloss on the meaning of 'punitive' in this context. Because he is detained under civil—rather than criminal—process, an SVPA detainee is entitled to 'more considerate treatment' than his criminally detained counterparts." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (quoting Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982)). Thus, "due process sets an absolute floor on the conditions civil detainees can be confined in. At a minimum, conditions must be less restrictive than post-conviction criminal detention." Doe v. Becerra, 732 F. Supp. 3d 1071, 1088 (N.D. Cal. 2024).

The petition alleges that while detained, Petitioner's "serious medical needs have gone untreated." (ECF No. 1 at 7.) In late August 2025, Petitioner fractured his right ankle in a workplace accident. His physician recommended surgery, which Petitioner could not afford. At the detention facility, Petitioner has only received pain medication and continues to suffer significant pain that worsens when he walks. (Id.) In Shafaq, this Court found "the conditions of confinement do not significantly weigh in Petitioner's favor" where the petitioner was diagnosed

with an inguinal hernia, his scheduled surgery was canceled, and he submitted a letter from a doctor stating that if left untreated, the herniated abdominal contents may become trapped and compromise blood supply to the entrapped tissue leading to tissue death, and that, if not properly managed, the hernia could result in bowel obstruction, perforation, sepsis, and even death. Shafaq, 2026 WL 1785249, at *9. The Court stated that "[a]lthough Petitioner's inadequate access to medical care is deeply concerning, the facts in the record do not rise to the level of a constitutional violation necessitating Petitioner's immediate release." Shafaq, 2026 WL 1785249, at *10. Accordingly, the undersigned recommends finding that the conditions of confinement factor does not weigh in Petitioner's favor.

4. Conclusion

Given that all three factors do not weigh in Petitioner's favor, the undersigned recommends finding that Petitioner is not entitled to relief on his substantive due process claim. Should circumstances change, however, due process may dictate a different outcome.

## III.
## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Respondent's motion to dismiss (ECF No. 8) be GRANTED IN PART with respect to the Counts III and IV and DENIED IN PART with respect to Counts I and II.
2. Counts III and IV of the petition for writ of habeas corpus be DISMISSED.
3. Counts I and II of the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District

Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 24, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE